JS 44 (Rev 06/17)

# CIVIL COVER SHEET

19 2005

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Carol Cary, Ed. D.

**MSG**

**(b)** County of Residence of First Listed Plaintiff    Sussex, DE
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Carmen L. Rivera Matos PA ID 32795
Carmen R. Matos Law Office, 1669 Edgewood Rd, Yardley, PA 19067
215-345-8550 (o); 609-558-9436 (cell)

## DEFENDANTS

Marple Newtown School District, Defendant;
Kathryn Chandless, James Orwig, Joseph Driscoll, Individuals

County of Residence of First Listed Defendant    Delaware County, PA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED

Attorneys *(If Known)*
Michael V. Puppio, Katherine Meehan, Raffaele Puppio
19 W. Third St, Media, PA 19063
610-891-6710

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ❒ 1   U.S. Government<br>     Plaintiff | ☒ 3   Federal Question<br>     *(U.S. Government Not a Party)* |
| ❒ 2   U.S. Government<br>     Defendant | ❒ 4   Diversity<br>     *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❒ 1 | ☒ 1 | Incorporated *or* Principal Place<br>of Business In This State | ❒ 4 | ❒ 4 |
| Citizen of Another State | ❒ 2 | ❒ 2 | Incorporated *and* Principal Place<br>of Business In Another State | ❒ 5 | ❒ 5 |
| Citizen or Subject of a<br>Foreign Country | ❒ 3 | ❒ 3 | Foreign Nation | ❒ 6 | ❒ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❒ 110 Insurance<br>❒ 120 Marine<br>❒ 130 Miller Act<br>❒ 140 Negotiable Instrument<br>❒ 150 Recovery of Overpayment<br>    & Enforcement of Judgment<br>❒ 151 Medicare Act<br>❒ 152 Recovery of Defaulted<br>    Student Loans<br>    (Excludes Veterans)<br>❒ 153 Recovery of Overpayment<br>    of Veteran's Benefits<br>❒ 160 Stockholders' Suits<br>❒ 190 Other Contract<br>❒ 195 Contract Product Liability<br>❒ 196 Franchise | **PERSONAL INJURY**<br>❒ 310 Airplane<br>❒ 315 Airplane Product<br>    Liability<br>❒ 320 Assault, Libel &<br>    Slander<br>❒ 330 Federal Employers'<br>    Liability<br>❒ 340 Marine<br>❒ 345 Marine Product<br>    Liability<br>❒ 350 Motor Vehicle<br>❒ 355 Motor Vehicle<br>    Product Liability<br>❒ 360 Other Personal<br>    Injury<br>❒ 362 Personal Injury -<br>    Medical Malpractice | **PERSONAL INJURY**<br>❒ 365 Personal Injury -<br>    Product Liability<br>❒ 367 Health Care/<br>    Pharmaceutical<br>    Personal Injury<br>    Product Liability<br>❒ 368 Asbestos Personal<br>    Injury Product<br>    Liability<br>**PERSONAL PROPERTY**<br>❒ 370 Other Fraud<br>❒ 371 Truth in Lending<br>❒ 380 Other Personal<br>    Property Damage<br>❒ 385 Property Damage<br>    Product Liability | ❒ 625 Drug Related Seizure<br>    of Property 21 USC 881<br>❒ 690 Other | ❒ 422 Appeal 28 USC 158<br>❒ 423 Withdrawal<br>    28 USC 157<br><br>**PROPERTY RIGHTS**<br>❒ 820 Copyrights<br>❒ 830 Patent<br>❒ 835 Patent - Abbreviated<br>    New Drug Application<br>❒ 840 Trademark | ❒ 375 False Claims Act<br>❒ 376 Qui Tam (31 USC<br>    3729(a))<br>❒ 400 State Reapportionment<br>❒ 410 Antitrust<br>❒ 430 Banks and Banking<br>❒ 450 Commerce<br>❒ 460 Deportation<br>❒ 470 Racketeer Influenced and<br>    Corrupt Organizations<br>❒ 480 Consumer Credit<br>❒ 490 Cable/Sat TV<br>❒ 850 Securities/Commodities/<br>    Exchange |
| | | | **LABOR** | **SOCIAL SECURITY** | ❒ 890 Other Statutory Actions<br>❒ 891 Agricultural Acts<br>❒ 893 Environmental Matters<br>❒ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❒ 710 Fair Labor Standards<br>    Act<br>❒ 720 Labor/Management<br>    Relations<br>❒ 740 Railway Labor Act<br>❒ 751 Family and Medical<br>    Leave Act<br>❒ 790 Other Labor Litigation<br>❒ 791 Employee Retirement<br>    Income Security Act | ❒ 861 HIA (1395ff)<br>❒ 862 Black Lung (923)<br>❒ 863 DIWC/DIWW (405(g))<br>❒ 864 SSID Title XVI<br>❒ 865 RSI (405(g)) | |
| ❒ 210 Land Condemnation<br>❒ 220 Foreclosure<br>❒ 230 Rent Lease & Ejectment<br>❒ 240 Torts to Land<br>❒ 245 Tort Product Liability<br>❒ 290 All Other Real Property | ❒ 440 Other Civil Rights<br>☒ 441 Voting<br>☒ 442 Employment<br>❒ 443 Housing/<br>    Accommodations<br>❒ 445 Amer. w/Disabilities -<br>    Employment<br>❒ 446 Amer. w/Disabilities -<br>    Other<br>❒ 448 Education | **Habeas Corpus:**<br>❒ 463 Alien Detainee<br>❒ 510 Motions to Vacate<br>    Sentence<br>❒ 530 General<br>❒ 535 Death Penalty<br>**Other:**<br>❒ 540 Mandamus & Other<br>❒ 550 Civil Rights<br>❒ 555 Prison Condition<br>❒ 560 Civil Detainee -<br>    Conditions of<br>    Confinement | | **FEDERAL TAX SUITS**<br>❒ 870 Taxes (U.S. Plaintiff<br>    or Defendant)<br>❒ 871 IRS—Third Party<br>    26 USC 7609 |     Act<br>❒ 896 Arbitration<br>❒ 899 Administrative Procedure<br>    Act/Review or Appeal of<br>    Agency Decision<br>❒ 950 Constitutionality of<br>    State Statutes |
| | | | **IMMIGRATION**<br>❒ 462 Naturalization Application<br>❒ 465 Other Immigration<br>    Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original<br>Proceeding | ❒ 2 Removed from<br>State Court | ❒ 3 Remanded from<br>Appellate Court | ❒ 4 Reinstated or<br>Reopened | ❒ 5 Transferred from<br>Another District<br>*(specify)* | ❒ 6 Multidistrict<br>Litigation -<br>Transfer | ❒ 8 Multidistrict<br>Litigation -<br>Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 12101, 42 USC 1983, 42 USC 2000e, 29 USC 621, 43 PS 951

Brief description of cause:
Disability discrimination, age discrimination, denial of equal protection, sex discrimination, breach of contract

## VII. REQUESTED IN COMPLAINT:

❒ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F R.Cv P

**DEMAND $**
150,000+

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ❒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*

JUDGE   N/A     DOCKET NUMBER

DATE
May 3, 2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE   MAY - 6 2019     MAG JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| CAROL CARY, ED. D., PLAINTIFF | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | **19    2005** |
| MARPLE NEWTOWN SCHOOL | : | |
| DISTRICT ET AL.   DEFENDANTS. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of the court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                      ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          ( x )

| | | |
|---|---|---|
| 5/3/19 | Carmen L. Rivera Matos, Esq. | |
| Date | Attorney-at-law | Attorney for Plaintiff |
| 215-345-8550 | | crmatoslaw@aol.com |
| Telephone | FAX Number | E-Mail Address |

(Civ. 660)  10/02

MAY -6 2019

*MSG*

*19-CV-2005*

*19 2005*

*MSG*

# DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 27506 Shipwreck Drive, Selbysville, DE 19975

Address of Defendant: 40 Media Line Road, Newtown Square, PA 19073

Place of Accident, Incident or Transaction: Newtown Square, PA

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: May 3, 2019 _____ PA 32795
   *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.** *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☑ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
   *(Please specify)*

**B.** *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*
☐ 7. Products Liability
☐ 8. Products Liability — Asbestos
☐ 9. All other Diversity Cases
   *(Please specify)*

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Carmen L. Rivera Matos, counsel of record *or pro se plaintiff*, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: May 3, 2019 _____ PA 32795
   *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38

Civ 609 (5/2018)   MAY - 6 2019   MAY - 6 2019

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

CAROL CARY, Ed. D.                              :
27506 Shipwreck Drive
Selbyville, DE  19975

                                            :        CIVIL ACTION
                                                     No._____

                Plaintiff,                    :
        v.
MARPLE NEWTOWN SCHOOL DISTRICT                  :        Jury Trial Demanded
40 Media Line Road
Newtown Square, PA  19073                       :

                Defendant.                    :

Kathryn Chandless (President of Board)          :
17 Bishop Hollow Road
Newtown Square, PA  19073                       :

            Individual Defendant,             :

Joseph Driscoll (Interim Superintendent)        :
1329 Dunsinane Drive
West Chester, PA  19380                          :

            Individual Defendant,             :

and                                             :

James Orwig (Human Resources Director)          :
380 Hilltop Road
Kutztown, PA  19530                             :

            Individual Defendants.

**COMPLAINT**

    **NOW COMES** the plaintiff, Dr. Carol Cary, by her counsel and makes the following
Complaint:

## JURISDICTION

1. Jurisdiction to decide all questions arising under 42 U.S.C. § 1983 lies in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1331 (Federal Question), 1332 (Diversity), and 1343 (3) and (4) (Civil Rights).

2. Jurisdiction to decide all questions under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended (Title VII), lies in this Court pursuant to 28 U.S.C. § 1331 and 1342 (3) and (4), as well as 42 U.S.C. §2000e-5(f)(3).

3. Jurisdiction to decide all questions under the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. § 12101 et seq., as amended (ADAAA) and 42 USC § 1981A, lies in this court pursuant to 28 U.S.C. §1331 and 1342 (3) and (4) and 28 U.S.C. § 12117.

4. Jurisdiction to decide all questions under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq., as amended (ADEA), lies in this court pursuant to 28 U.S.C. § 1331 and 1342 (3) and (4) and 29 U.S.C. § 626 (c).

5. At all times material to this Complaint, Defendants have acted under color of state law, ordinance, custom, or usage.  Defendant Marple-Newtown School District (Defendant School District) has acted pursuant to the enactment of municipal policy.

6. Jurisdiction to decide all questions under pendant state claims brought under 43 P.S. § 951 et seq of the Pennsylvania Human Relations Act (PHRA) and breach of contract lies in this court pursuant to the doctrine of pendent jurisdiction.

## PLAINTIFF

7. Plaintiff is Carol Cary,  Ed. D. (Plaintiff or Dr. Cary) an adult citizen of the United States and the State of Delaware.

8. Dr. Cary resides at 27506 Shipwreck Drive, Selbyville, Delaware 19975.

2

9. At all times relevant to this Complaint, Plaintiff was a "qualified employee" as defined by 42 USC §12111(8) of the ADA. This is because she performed all of the essential functions of her job for more than two years prior to her medical leave and with reasonable accommodation, could have continued to perform all such functions.

## DEFENDANTS

10. Defendant Marple Newtown School District (Defendant or School District) is a public school district and political subdivision organized and existing pursuant to the laws of the Commonwealth of Pennsylvania.

11. Defendant's business address is 40 Media Lane Road, Newtown Square, PA 19073 (Delaware County).

12. At all times material to this Complaint Defendant School District acted under color of state law.

13. Defendant Kathy Chandless is an adult citizen of the United States and the Commonwealth of Pennsylvania, who is President of the School Board of Marple Newtown School District. Her business address is 40 Media Lane Road, Newtown Square, PA 19073.

14. Defendant James Orwig is a male adult citizen of the United States and the Commonwealth of Pennsylvania who is Human Resources Director of the Marple Newtown School District. His address is 380 Hilltop Road, Kutztown, PA 19530.

15. Defendant Joseph Driscoll is a male adult citizen of the United States and the Commonwealth of Pennsylvania who was the Business Manager and replaced Plaintiff as Interim Superintendent. His address is 1329 Dunsinane Drive, West Chester, PA 19380.

16. At all times material to this Complaint, individual Defendants Kathy Chandless, James Orwig and Joseph Driscoll acted under color of state law and aided and abetted in the unlawful actions brought under PHRA.

17. At all times material to this Complaint, Defendant Marple Newtown School District was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964 (42 USC 2000e(b) as amended, the ADAAA as amended (42 USC § 12111(8), ADEA (29 USC §630(b) and the PHRA (43 PS §§951-963). In addition, Defendant School District engaged in an industry affecting commerce and had fifteen or more employees for each working day during each of twenty or more calendar weeks in the years 2015-2018.

## FACTS

18. On May 12, 2015 Defendant entered into a written agreement (the "Agreement") to hire Dr. Cary as Superintendent of Marple Newtown School District pursuant to the applicable provisions of the Public School Code of 1949 (PA School Code).

19. The Agreement provides that "the term of employment shall be three (3) years, from July 1, 2015 through June 30, 2018 unless terminated earlier as provided hereinafter. This Agreement shall terminate immediately upon expiration of the Term (except as may be otherwise provided by Section 10-1073 of the PA School Code) unless this Agreement is allowed to renew automatically under the provisions of Section 10-1073(b) of the PA School Code (Article I of the Agreement).

20. Dr. Cary was qualified for the position of Superintendent. She held a Pennsylvania Superintendent Certification and Letter of Eligibility, a Pennsylvania Principal K-12 Certification, and a Doctoral Degree in Educational Leadership.  She also worked as

Superintendent for Secondary Schools of the Archdiocese of Philadelphia Office of Catholic Education from July 2012 to June 2015.

21. Dr. Cary was charged with the administration of the District schools under the direction of the Board of School Directors (the Board).

22. Dr. Cary's responsibilities included but were not limited to the following (Article II of the Agreement):

   i. The day-to-day administration of the District subject to the policies of the Board;

   ii. Recommending the employment of employees, and directing and assigning teachers and other District employees under her supervision;

   iii. Organizing and supervising the administrative and supervisory staff under the Superintendent's supervision;

   iv. Overseeing timely review of all curricular areas required by law, as well as other subjects as the Board may require, and making recommendations to the Board for the advancement of curriculum;

   v. Suggesting policies and procedures to the Board for the efficient and proper operation of the District;

   vi. Recommending annual objectives for the District consistent with the direction and priorities established by the Board;

   vii. Ensuring that the policies of the District and the requirements of law are being fulfilled;

   viii. Providing the data and information necessary to allow the Board to adopt a budget in accordance with the School Code, and providing the Board with all information pertinent to its legislative role;

ix. Preparing and submitting to the Board all matters requiring legal action, in consultation with the District Solicitor;

x. Visiting on a regular basis all schools in the District, maintaining an active presence in the school community, and informing and engaging the community with respect to operation of the school system;

xi. Attending all regular and special meetings of the Board and all committee meetings and other meetings as scheduled;

xii. Participating in such seminars, workshops, in-service programs, school activities and programs as are necessary to maintain the knowledge and skills required of her position, as directed by the Board;

xiii. Informing the Board as to the operation of the school system and making recommendations for the more efficient operation thereof; and

xiv. Performing all duties consistent with and incident to the Office of the District Superintendent, including as set forth in the School Code, and performing other duties as may be prescribed by the Board (Article 2.01).

23. The Agreement provides that Dr. Cary shall submit to an annual physical examination and tests as recommended by her physician to insure her continued good health during the term of the Agreement. (Article 2.04)

24. The School District did not request that Dr. Cary submit to a physical examination, although Dr. Cary had an annual exam during her tenure.

25. According to the Agreement Dr. Cary was entitled to receive a salary of $185,000 and salary increase in the Board's discretion as well as health and prescription drug benefits, twelve days of paid sick leave, long term disability benefits, vacation, personal, holidays,

funeral leave, group life insurance, reimbursement for courses and professional

memberships and association dues. (Article III, 3.01)

26. The Agreement provides that School District may terminate Dr. Cary's employment any

time by notifying her in writing of such termination before such termination becomes

effective, provided that such written notice shall designate the cause of termination (which

cause may include, but is not necessarily limited to, the reasons described in Section 10-

1080 of the PA School Code) (Article 4.01).

27. The School District did not provide Dr. Cary written notice of termination of her

employment at any time.

28. The Agreement provides that the School District Board shall evaluate the performance of

Dr. Cary at least once per year during the term of the agreement (Article V-5.01).

29. Dr. Cary received a performance evaluation on April 7, 2017 of Proficient (Performance is

adequate, meeting or occasionally exceeding standards or expectations) for the 2015-2016

first year term of her employment.

30. Upon information and belief, the School District denied Dr. Cary a performance

evaluation per the Agreement for the 2016-2017 school year because her performance was

satisfactory.

31. If Dr. Cary's performance had <u>not</u> been satisfactory, she would have been notified, per the

Agreement and she would have been evaluated as provided in Section 5.03 of the

Agreement, "In the event that the Board determines that the performance of the

Superintendent is unsatisfactory in any respect, it shall describe same in writing in

reasonable detail. A copy of the written evaluation shall be delivered to the

Superintendent.  The Superintendent shall have the right to make a written response to the

evaluation.  The Board's evaluation and the Superintendent's response shall be confidential and non-public unless disclosure is required by law or legal process, including but not limited to the provisions of Section 10-1073.1 of the PA School Code relating to information to be disclosed on the District's public website." (Article V, 5.01)

32. On August 15, 2017 the School district approved Dr. Cary's attendance at the Delaware County Intermediate Unit (DCIU) Chief School Administrators' meeting and retreat in New York city from Sunday October 29, 2017 to October 31, 2017, the focus of the meeting Science Technology, Engineering Math (STEM) at no cost to the district.

33. Dr. Cary was required to advise the Board in writing at least two hundred seventy (270) days prior to the end of the Agreement as to her wish concerning contract renewal and continued employment. Unless Dr. Cary advised the Board that she did not want to renew, the Board must notify Dr. Cary that it intends to renew the contract for a further term of from three to five years or conversely, that the Agreement will terminate and other candidates will be considered as Superintendent.

34. In October 2017, Dr. Cary advised the Board of her wish to continue employment and renewal after the initial term of the Agreement.

35. On November 5, 2017 Dr. Cary suffered a stroke and was hospitalized through November 21, 2017.

36.  On November 6, 2017 Dr. Cary's husband John Cary notified the School District (Ms. Kathryn Chandless, President of the Board) that Dr. Cary was admitted to the hospital and was undergoing testing that it appeared she had a TIA (transient cerebral ischemia) or stroke. Later, it would be found to have been a cerebrovascular accident (CVA).

37. On November 28, 2017, the Board approved medical leave for Dr. Cary effective November 6, 2017 through December 14, 2017 and FMLA leave from November 6, 2017 through February 4, 2018.

38. Also on November 28, 2017 Board Vice-President Matthew Bilker asked for a motion to appoint Joseph Driscoll as substitute district superintendent to serve for such period of time as Dr. Cary is absent on leave. A question was raised about who would be substitute superintendent while Dr. Cary was on leave. The motion was made by Mr. Matthew DeNucci, seconded by Nicholas Reynolds and with no further discussion passed 8-0. The minutes did not mention that Mr. Driscoll would receive additional pay of $150 per day for his work as substitute superintendent, that he lacked any education experience and lacked a Superintendent Certificate.

39. In December 2017 the Solicitor of the Board, Mark Sereni Esquire, asked to stop by Dr. Cary's home. Dr. Cary was not fully recovered and could not meet. Dr. Cary then asked her personal attorney, Mr. Robert Firkser, to call Solicitor Sereni to inquire about the nature of the visit.

40. Mr. Firkser understood that Solicitor Sereni wanted to know about Dr. Cary's health condition and Dr. Cary's intentions about returning to work, how long she would be out, whether short term or long term. Mr. Firkser responded that Dr. Cary was going to return in a couple months, in early 2018.

41. Solicitor Sereni told Mr. Firkser that the School District agenda for January 2018 would include an item regarding the initial term expiration of Dr. Cary's employment contract and opening the position to her for renewal, (Dr. Cary, the incumbent superintendent) or

any other candidate due to the notice period required by the School Code. Sereni did not

say that Dr. Cary's contract would not be renewed.

42. On January 2, 2018 the Agenda stated in response to a question regarding Dr. Cary's

contract, "the contract with Dr. Cary is due to expire and in order for the candidate to start

on July 1, 2018 the position needed to be open to the current superintendent or any other

candidate for the 150-day School Code period."

43. On January 18, 2018 the Board approved a motion that in order to fulfill the Board's

obligation under School Code Section 10-1073(b), to provide notification that the Board

will consider candidates as well as the current superintendent for the position of

Superintendent because the current three-year term is set to expire on June 30, 2018.

44. Section 10-1073(b) of the School Code provides:

> (b) At a public meeting of the board of school directors occurring at least ninety (90) days prior to the expiration date of the term of office of the district superintendent, the agenda shall include an item requiring affirmative action by five or more members of the board of school directors to notify the district superintendent that the board intends to retain him for a further term of three (3) to five (5) years or that another or other candidates will be considered for the office. In the event that the board fails to take such action at a public meeting of the board of school directors occurring at least ninety (90) days prior to the expiration date of the term of office of the district superintendent, the term of office which he is currently serving shall be extended one time for a one (1) year period, upon the conclusion of which the term of office shall terminate unless the board has taken action prior to the end of the one (1) year extension to retain the district superintendent for a further term as provided in this subsection. The notification shall not prevent the superintendent from being considered for or appointed to a further term of office notwithstanding the consideration of other candidates. ((b) amended Nov. 6, 2017, P.L.1142, No.55)

45. From December 6, 2017 through March 1, 2018 Dr. Cary received outpatient

rehabilitation twice per week for her disability.

46. In January 2018, Dr. Cary's medical provider wrote a note for Dr. Cary to return to work

on March 19, 2018 with the accommodation of not walking long distances as she was used

to doing this in the past.  Dr. Cary submitted this note to the School District but she did

not receive any response in writing or otherwise.

47. The Agreement provides that all written notices permitted or required under this

Agreement shall be sent by certified mail.  (Article 6.07)

48. Dr. Cary's medical providers approved medical leave until March 18, 2018.

49. On January 23, 2018 the Board approved administrative [medical] leave for Dr. Cary

effective February 5, 2018 through and including March 18, 2018 for medical reasons.

50. On February 27, 2018 the Board approved Dr. Cary's return to work after medical leave.

51. On March 19, 2018, Dr. Cary returned to work with a medical note she provided to

Human Resources (HR) Director James Orwig requesting accommodation of part time

work to ease her transition to work.

52. Dr. Cary is a qualified individual with a disability (real or perceived) and she could

perform the duties of Superintendent with or without an accommodation.

53. The School District's Human Resource Director James Orwig told Dr. Cary that she could

not return to work part time, only full time with no restrictions. Mr. Orwig said either Dr.

Cary could remain at home or work full time without restriction. Orwig asked Dr. Cary

why she came back to work. Dr. Cary responded she was able to work and she wanted to

work.  Orwig also asked Dr. Cary why didn't she stay out on medical leave until June

[2018] since her contract covered disability benefits through June 30, 2018.

54. Soon after Dr. Cary returned to work, she asked Orwig about the renewal of her contract

but he said he had not heard anything.

55. After Dr. Cary returned to work, she was treated unfavorably in that she was excluded

from meetings, shunned and denigrated by the administration.  Mr. Orwig told Dr. Cary,

"We are worried about you. You might stroke walking down the hall" which Dr. Cary

understood to mean he and the School Board were upset about her having had a stroke and

that Orwig perceived her as disabled.

56. Just two days after Dr. Cary returned to work, on or about March 21, 2018, Business

Manager Joseph Driscoll compared Dr. Cary to his seventy-two-year-old mother who had

several debilitating strokes.  Again Dr. Cary understood Driscoll perceived her as

disabled.

57. On March 21, 2018 Dr. Cary obtained her doctor's note to return to work full time without

restrictions.  Dr. Cary gave the note to Mr. Orwig.

58. Also soon after Dr. Cary returned to work, Mr. Orwig told Dr. Cary that a parent asked at

a public meeting why the Superintendent's evaluation was not posted as it was supposed

to be for the current year. Dr. Cary told Mr. Orwig she would ask the School Board to

complete her review for the current year.

59. On the afternoon of May 4, 2018 Dr. Cary was presented with a false, negative

performance evaluation for the 2016-2017 school year. Dr. Cary believes that her

performance was proficient, meeting or exceeding standards.

60. Dr. Cary was not given an opportunity to respond to said evaluation received on May 4,

2018.

61. Defendant School District did not post an evaluation for Dr. Cary for school years 2016 -

2017 or 2017-2018 on the school district's website as required by her contract.

62. The evaluation given to Dr. Cary on May 4, 2018 is a pretext for discrimination based on

Dr. Cary's disability, real or perceived.

63. According to the Marple Newtown School District Data and Achievement Report (published Fall 2018) student assessment data show outstanding improvements in scores since Dr. Cary worked at Defendant School District. Focused on continuous improvement and growth, Dr. Cary promoted good instruction in all classrooms every day. The percent of students who scored Advanced and Proficient on the 2017-18 Pennsylvania System of School Assessment (PSSA) increased at the 3rd grade in ELA and Math, the 4th grade in Math, the 5th grade in Math and English Language Arts (ELA), and the 7th grade in Math and ELA.

64. The percent of students who scored Below Basic decreased in 3rd grade Math, 4th grade ELA, 6th grade ELA and Math, 7th grade Math, and 8th grade ELA, Math, and Science. Two of the district's lowest performing schools showed significant improvement after Dr. Cary directed the schools to try differentiated teaching strategies and to teach the state standards.

65. Loomis Elementary had a 13-point increase in ELA scores a 27-point increase in Math scores in Grade 3 during Dr. Cary's term. Russell Elementary had a 31.9-point increase in Grade 3 ELA scores and a 26.5-point increase in Grade 3 Math scores during Dr. Cary's term.

66. The high school Keystone exams showed significant growth from 14-15 to 17-18 also. Algebra I Proficient students increased According11.2%. Literature Proficient students increased 8.6 % and Biology Proficient students increased 5.1%.

67. The Marple Newtown School District showed higher scores than the state in all areas and grades for all three years that Dr. Cary served at Marple Newtown School District.

68. Prior to May 4, 2018 Dr. Cary received no warning from any of the Defendants regarding any issues with her performance.

69. Also on May 4, 2018, Dr. Cary was personally verbally informed by Board President Kathryn Chandless that her contract would not be renewed, that her position had been posted four months' prior [January 2018] while she was on medical leave. President Chandless told Dr. Cary not to complete a transition plan because the position would be filled by an interim superintendent, Joseph Driscoll, a substantially younger male.

70. On June 11, 2018 at a public school meeting a parent asked President Chandless if the Board was appointing Joseph Driscoll as Interim Superintendent for a year despite his lack of educational experience and Superintendent's Certificate. The parent stated that President Chandless mentioned Driscoll's appointment at a private meeting held with parents, Driscoll, HR Director Orwig, and President Chandless.

71. Joseph Driscoll is male, substantially younger than Dr. Cary, had no experience as an education administrator, teaching, does not have a Doctorate of Education degree and does not have a Superintendent Certificate as of June 2018 as required by Pennsylvania Education Code. He is less qualified or unqualified than Dr. Cary for the Superintendent position but he receives a substantially greater salary.

72. At the June 26, 2018 school meeting concerns were raised about Mr. Driscoll's qualifications to assume the duties of the Superintendent as well as his high salary. The Board responded it "wanted someone in the interim and that Joe Driscoll was the perfect fit for that position. We are confident that he can do the job. Saving of some salary was not the reason for filling this position with Joe."

73. Dr. Cary avers that her Agreement was not renewed for another three to five-year term by the Defendants because of her disability and/or because they regarded Dr. Cary as a person with a disability.

74. Dr. Cary has continuously made reasonable efforts to mitigate her damages by seeking substantially equivalent alternate employment.

## COUNT I: SCHOOL DISTRICT
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## SEX DISCRIMINATION

75. Plaintiff incorporates paragraphs 1-67 herein by reference.

76. On June 26, 2018 Defendant replaced Plaintiff with a male employee at a higher salary.

77. Plaintiff was treated differently due to the non-renewal of her contract and reassignment of her job duties to a male employee who is less qualified than she is and lacks the Superintendent of Schools Certificate, Joseph Driscoll.

78. Plaintiff believes and therefore avers that she has been subjected to discrimination on account of her sex, female.

79. As a result of Defendant's acts of discrimination, including but not limited to non-renewal of her contract on the basis of sex, plaintiff has suffered lost economic wages and benefits, pain and suffering, embarrassment, humiliation and related compensatory damages.

80. On August 3, 2018, Plaintiff filed a timely amended charge with the U.S. Equal Employment Opportunity Commission (EEOC) which was docketed as Charge No. 530-2018-04765.   The charge was cross-filed with the Pennsylvania Human Relations Commission.

81. On February 14, 2019, Plaintiff received a form "Dismissal and Notice of Rights" from the EEOC, dated February 11, 2019. A copy of the "Dismissal and Notice of Rights" form is attached and incorporated to this complaint as **Exhibit 1**.

82. All administrative and procedural prerequisites to the filing of this action have been satisfied.

83. As a result of the defendant School District's actions, as stated previously, Plaintiff Dr. Carol Carey has been discriminated against in employment on the basis of sex, in violation of Title VII of the Civil Rights Act of 1964 as amended.

## COUNT II:  SCHOOL DISTRICT AND INDIVIDUAL DEFENDANTS
## DENIAL OF EQUAL PROTECTION
## 42 USC § 1983

84. Plaintiff Dr. Carol Cary incorporates paragraphs 1-83 by reference.

85. In alternative to Count I, as a result of the actions of the Defendant School District and the individual Defendants Chandless, Orwig and Driscoll's actions, as stated previously, Plaintiff has been denied the equal protection of the law, as guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution.

86. At all times relevant to this Complaint, the conduct of individual Defendants Chandless, Orwig and Driscoll was vindictive, oppressive, malicious, wanton, willful and reckless, all in knowing disregard of Plaintiff's rights to equal protection, guaranteed by the Fourteenth Amendment to the U. S. Constitution and Article I, § 28 of the Pennsylvania Constitution.

## COUNT III: SCHOOL DISTRICT
## AMERICANS WITH DISABILITIES ACT

87. Plaintiff Dr. Carol Cary repeats paragraphs 1-86 and incorporates them in this Count by reference.

16

88. In November 2018, Plaintiff Dr. Cary suffered a stroke, a physical impairment that substantially limits her in major life activities.

89. As a result of this disability, Plaintiff was hospitalized, received medical and outpatient treatment.

90. The Defendant School District failed to accommodate Dr. Cary by denying her two requests to allow her to work part-time and not to walk long distances as requested by Dr. Cary's medical provider.

91. Defendant School District's requirement that Dr. Cary return to full duty with no restrictions or stay home imposed upon her criteria that screened out or tended to screen out Dr. Cary, an individual with a disability, in violation of 42 U.S.C. § 12182(b)(2)(A)(i).

92. The Defendant School District denied the renewal of Dr. Cary's employment for another three to five years because of her disability real or perceived in violation of 42 U.S.C. § 12182 (a).

93. The School District's administrators perceived Dr. Cary as a person with a disability after Dr. Cary returned to work, made discriminatory comments to her that made her uncomfortable, and treated her unfavorably by excluding her from meetings, shunned or denigrated her.

94. In early May 2018, suddenly and without warning, just two months after making accommodation requests, Dr. Cary learned from President Chandless that her contract would not be renewed when she simultaneously received a pretextual, false, and negative performance review.

95. Defendant School District denied Dr. Cary reasonable accommodations in violation of 42 U.S.C. § 12112 (a), (b) (5) (A) as amended.

96. Defendant School District did not renew or consider Dr. Cary for renewal of her contract due to her disability or perceived disability in violation of 42 U.S.C. §12112(a) et seq. as amended.

97. Defendant School District retaliated against Plaintiff because she opposed unlawful employment practices when it refused to renew her contract in violation of 42 U.S.C. § 12203 (a) as amended.

98. Defendant School District retaliated against Plaintiff because it treated her differently after she returned to work by intimidation when she exercised her rights granted by the ADA in violation of 42 U.S.C. § 12203(b).

99. As a direct and proximate result of Defendant School District's actions and inactions directed at Dr. Cary, she has suffered and continues to suffer damages, including but not limited to: loss of income, employee benefits, pension or retirement benefits, emotional distress, pain and suffering, anxiety, attorney fees, costs, humiliation and inconvenience.

## COUNT IV:  SCHOOL DISTRICT
## AGE DISCRIMINATION IN EMPLOYMENT ACT

100. Plaintiff Dr. Carol Cary repeats paragraphs 1- 99 incorporated herein by reference.

101. Plaintiff Dr. Carol Cary is an individual over the age of forty (40) in the protected age group.

102. Defendant replaced Dr. Cary with a substantially younger, less qualified individual under circumstances constituting age discrimination.

103. As a direct and proximate result of Defendant School District's actions and inactions, by and through their agents, workmen, servants, employees, administrators, officers and directors wrongfully violated the ADEA, resulting in the loss of the back pay, front pay, benefits and employment opportunity to Dr. Cary's great detriment and loss.

## COUNT V:  SCHOOL DISTRICT AND INDIVIDUAL DEFENDANTS PENNSYLVANIA HUMAN RELATIONS ACT (PHRA) 43 P.S. § 951, ET SEQ. SEX, AGE AND HANDICAP DISCRIMINATION IN EMPLOYMENT

104. Plaintiff Dr. Carol Cary repeats incorporates paragraphs 1-103 herein by reference.

105. Defendants discriminated against Plaintiff in employment in violation of the PHRA based

on her sex, age and handicap real or perceived.

106. At all times relevant to this Complaint, individual Defendants Chandless, Orwig and

Driscoll aided and abetted discrimination against Plaintiff in violation of the PHRA.

107. As a direct and proximate result of Defendant School District's actions and inactions

directed at Dr. Cary, she has suffered and continues to suffer damages, including but not

limited to: loss of income, employee benefits, pension or retirement benefits, emotional

distress, pain and suffering, anxiety, attorney fees, costs, humiliation and inconvenience,

and attorney fees and costs.

## COUNT VI: BREACH OF CONTRACT (ALL DEFENDANTS)

108. Plaintiff Dr. Carol Cary repeats and incorporates by reference paragraphs 1-107.

109. The Agreement between Dr. Carol Cary and the School District is a binding contract. See

**Exhibit 2** attached hereto.

110. Defendants have materially breached the Agreement as set forth above.

111. As a proximate result of such breach, Plaintiff Dr. Carol Cary has suffered and continues

to suffer damages, including but not limited to: loss of income, employee benefits, pension

or retirement benefits, emotional distress, pain and suffering, anxiety, attorney fees, costs,

humiliation and inconvenience, and attorney fees and costs.

## <u>DAMAGES – ALL COUNTS</u>

112. Plaintiff Dr. Carol Cary repeats and incorporates by reference paragraphs 1-111.

100. Plaintiff Dr. Cary has been damaged by the foregoing actions by the Defendants, jointly and severally, in an amount which cannot presently be determined, but which exceeds One Hundred Fifty Thousand Dollars ($150,000.00).

94.  Plaintiff Dr. Cary claims damages, which include lost wages, compensatory damages for pain and suffering, humiliation, loss of earning capacity, fringe benefits, pension benefits, loss of 401(k), together with loss of back and front pay, liquidated damages, pre and post judgment interest, negative tax consequences, punitive damages and all other legal and equitable relief available by statute.

WHEREFORE, Dr. Cary prays that this Court enter judgment for her and against

Defendants, jointly and severally, as follows:

a.  Loss of economic compensation, loss of earning capacity, benefits, pension, negative tax consequences, loss of promotional and career opportunities from the date of non-renewal of her contract, back and front pay and benefits; in excess of $150,000.00, liquidated damages as allowed by law, compensatory damages; punitive damages, damages for pain, suffering and humiliation as allowed by the PHRA.

b.  Other legal and equitable relief including reinstatement, if appropriate;

c.  Dr. Cary's reasonable attorney fees together with costs and interest;

d.  Such other relief as justice demands.

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

Respectfully submitted,

/s/Carmen L. Rivera Matos CR1455
PA ID 32795
Law Office of Carmen R. Matos
1669 Edgewood Road, Ste. 212
Yardley, PA  19067
215-345-8550 (o) 609-558-9436 (cell)

5/3/19

EXHIBIT 1

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To: **Carol Cary**
27506 Shipwreck Drive
Selbyville, DE 19975

From: **Philadelphia District Office**
**801 Market Street**
**Suite 1300**
**Philadelphia, PA 19107**

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2018-04765** | **Legal Unit,** **Legal Technician** | **(215) 440-2828** |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[X] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Jamie R. Williamson*

**Jamie R. Williamson,**
**District Director**

February 11, 2019
*(Date Mailed)*

Enclosures(s)

cc:    **Michael Puppio, Esq.**
**RAFFAELE PUPPIO**
**19 West Third Street**
**Media, PA 19063**

**Carmen Matos, Esq.**
**CARMEN MATOS ESQ**
**1669 Edgewood Rd, Ste 212**
**Yardley, PA 19067**

EXHIBIT 2

## EMPLOYMENT AGREEMENT

This **AGREEMENT** is made this 12th day of May, 2015, by and between **MARPLE NEWTOWN SCHOOL DISTRICT**, having its place of business at 40 Media Line Road, Newtown Square, Delaware County, Pennsylvania (the **"Employer"** or **"District"**),

AND

**DR. CAROL CARY**, of 371 Dowlin Forge Road, Exton, Pennsylvania 19341 (the **"Employee"** or **"Superintendent"**).

### ARTICLE I – TERM OF EMPLOYMENT

1.01    The Employer hereby employs the Employee, and the Employee hereby accepts employment, as Superintendent of the Marple Newtown School District upon the terms and conditions hereinafter set forth and in accordance with the applicable provisions of the Public School Code of 1949 (the "School Code").  The Term of employment shall be three (3) years, from July 1, 2015 through June 30, 2018, unless terminated earlier as provided hereinafter.  This Agreement shall terminate immediately upon expiration of the Term (except as may be otherwise provided by Section 10-1073 of the School Code), unless this Agreement is allowed to renew automatically under the provisions of Section 10-1073(b) of the School Code.

### ARTICLE II – DUTIES AND OBLIGATIONS OF EMPLOYEE

2.01    The Employee shall be charged with the administration of the District schools under the direction of the Board of School Directors (the "Board"), and agrees to perform faithfully and in a competent and professional manner the duties of Superintendent in accordance with the provisions of this Agreement, the School Code and all applicable laws, and the rules,

regulations and policies of the Board.  The Superintendent's responsibilities shall include, but may not be limited to, the following:

    i.    The day-to-day administration of the District subject to the policies of the Board;

    ii.    Recommending the employment of employees, and directing and assigning teachers and other District employees under her supervision;

    iii.    Organizing and supervising the administrative and supervisory staff under the Superintendent's supervision;

    iv.    Overseeing timely review of all curricular areas required by law, as well as other subjects as the Board may require, and making recommendations to the Board for the advancement of curriculum;

    v.    Suggesting policies and procedures to the Board for the efficient and proper operation of the District;

    vi.    Recommending annual objectives for the District consistent with the direction and priorities established by the Board;

    vii.    Ensuring that the policies of the District and the requirements of law are being fulfilled;

    viii.    Providing the data and information necessary to allow the Board to adopt a budget in accordance with the School Code, and providing the Board with all information pertinent to its legislative role;

    ix.    Preparing and submitting to the Board all matters requiring legal action, in consultation with the District Solicitor;

    x.    Visiting on a regular basis all schools in the District, maintaining an active presence in the school community, and informing and engaging the community with respect to operation of the school system;

    xi.    Attending all regular and special meetings of the Board and all committee meetings and other meetings as scheduled;

    xii.    Participating in such seminars, workshops, in-service programs, school activities and programs as are necessary to maintain the knowledge and skills required of her position, as directed by the Board;

    xiii.    Informing the Board as to the operation of the school system and making recommendations for the more efficient operation thereof; and

    xiv.    Performing all duties consistent with and incident to the Office of the District Superintendent, including as set forth in the School Code, and performing such other duties as may be prescribed by the Board.

    2.02    The Employee covenants that she possesses all of the qualifications that are required by law to serve as District Superintendent. The Employee agrees to maintain throughout the Term of this Agreement a valid and current commission or other legal credentials as may be required by applicable laws and regulations and to present the same to the Board. She further agrees to subscribe to and take the proper oath of office before entering upon her duties.

    2.03    The Employee agrees to devote her full time, attention, energies, skills and labor to her employment as Superintendent during the Term of this Agreement. The Employee shall not engage in any outside work during the Term of this Agreement.

2.04    The Employee shall submit to an annual physical examination and such tests as are recommended by her physician to insure her continued good health during the Term of this Agreement.

## ARTICLE III – COMPENSATION

3.01    As compensation for services rendered by the Employee under this Agreement, the Employee shall be entitled to receive an annual salary of $185,000. The Employee may also receive, in the Board's sole discretion, a supplemental salary increase effective no later than July 1 of each of years 2 through 3 this Agreement; provided that any such supplemental increase shall not exceed 5.5% of the Employee's salary in the immediately preceding year.

3.02    The Employer shall provide the following insurances and other benefits to the Employee:

i.   Health and Prescription Drug benefits as follows: The District shall pay 90% of the premiums for the medical, dental, vision and prescription drug insurance provided by the District to the Employee, her spouse, and eligible dependents during the Term of this Agreement.

ii.  Twelve (12) days of paid sick leave per year, which shall run concurrently with any leave to which the Employee is entitled under the Family and Medical Leave Act and which shall accumulate from year to year only to the extent required under applicable law. If the Employee retires from the Pennsylvania public school system after at least five years of consecutive service as Superintendent, unused sick days shall be paid to the Employee at $50 per day up to a maximum of thirty (30) days. No payment of unused sick days shall be made under any other circumstances.

iii. A long term disability program, commencing after the utilization of all accumulated sick leave, which shall run concurrently with any leave to which the Employee is entitled under the Family and Medical Leave Act, as follows:

    a.  For the first 30 consecutive days                100% of salary

    b.  For the 31st consecutive day through
        the 60th consecutive day                         90% of salary

4

    c.  After 61 consecutive days up to a
        maximum of 180 consecutive days        80% of salary

No payment for unused disability benefits will be made upon termination.

iv.    Twenty (20) days of paid vacation leave per year. No cash payment for accrued unused vacation days shall be made and no vacation days shall accrue or be carried over each year. However, at the end of each year worked under this Agreement, up to five (5) unused vacation days, if available, shall be paid to the Employee in the form of an Employer contribution to the Employee's approved tax deferred 403B savings plan as selected and made available by the District. The Employee shall not use more than one week of vacation days consecutively without obtaining prior written Board approval.

v.    In years two and three of this Agreement, four (4) days of paid personal leave per year; provided that no unused personal days shall be accrued and/or carried over each year and no payment for unused personal leave days shall be made upon termination of this Agreement or at any time.

vi.    Four (4) days of paid funeral leave per year for a death in the Employee's immediate family and one (1) day of paid funeral leave per year for a death of the Employee's near relative. For purposes of this Agreement, immediate family shall mean the Employee's spouse, children, grandchildren, siblings, parents, grandparents and parents-in-law; and near relative shall mean the Employee's aunt, uncle, first cousin, niece, nephew, brother-in-law or sister-in-law. No unused funeral leave days shall accrue and/or carry over each year and no payment for unused funeral leave days shall be made upon termination of this Agreement or at any time.

vii.    One (1) day of paid leave per year for illness in the immediate family (as defined above), which shall run concurrently with any leave to which the Employee is entitled under the Family and Medical Leave Act; provided that no unused family illness days shall accrue and/or carry over each year and no payment for unused family illness days shall be made upon termination of this Agreement or at any time.

viii.    The following paid holidays annually: Labor Day, Thanksgiving Day and the day after Thanksgiving, December 24, December 25, January 1, Martin Luther King Day, Presidents Day, Memorial Day and July 4, and Thursday and Friday of spring break. Unless otherwise prescribed by the Board, holidays that fall on Saturdays shall be observed on the preceding Friday and holidays that fall Sunday shall be observed on the following Monday.

    ix.    A group life insurance policy in a coverage amount equal to twice the Employee's annual salary.

    x.    Reimbursement for the cost of any courses, degrees or tests taken, or conferences attended, by the Employee so long as they are directly related to her employment by the District and approved in advance in writing by the Board.

    xi.    Reimbursement for dues paid by the Employee for membership in professional associations directly related to the Employee's duties hereunder and approved by the Board; provided that the total of all such professional association dues shall not exceed $4,000.00.

3.03    The parties agree that the health care coverage benefits offered under this Agreement are intended to be structured so that the District is not obligated to pay any excise taxes, fees or penalties under the Patient Protection and Affordable Care Act, as amended, or its implementing regulations, for providing such benefits to the Superintendent and her covered dependents, if any.  If the District reasonably determines that it would be obligated to pay any such excise tax, fee or penalty for any health care coverage benefits provided under this Agreement, the parties agree that said benefits shall be modified in a manner that will eliminate the District's potential exposure to such excise taxes, fees or penalties.  The parties will discuss options to implement a modification that will avoid any excise taxes, fees or penalties, and will strive to mutually agree on such a modification.  If the parties do not reach agreement by the date on which the excise tax, fees or penalties would be triggered, the District may, in its sole discretion, implement a modification to avoid incurring any excise taxes, fees or penalties.

### ARTICLE IV – TERMINATION; RENEWAL

4.01    This Agreement and the Employee's employment may be terminated at any time by the Employer by notifying the Employee in writing of such termination before such termination becomes effective, provided that such written notice shall designate the cause of

termination (which cause may include, but is not necessarily limited to, the reasons described in Section 10-1080 of the School Code).

4.02    The Employee may terminate this Agreement by giving the Employer at least one hundred and twenty (120) days advance written notice of such termination.

4.03    The Employer and Employee also may terminate this Agreement by mutual agreement under such terms and conditions as are mutually agreed upon and memorialized in an appropriate written agreement.

4.04    In the event of the termination of this Agreement for any reason prior to the expiration of its Term, the Employee shall be entitled to the salary and benefits earned by and payable to her under this Agreement prior to the date of such termination, computed pro-rata up to and including that date. The Employee shall be entitled to no further compensation as of the date of such termination.

4.05    The Employee shall advise the Board in writing at least two hundred seventy (270) days prior to the end of this Agreement as to her wish concerning renewal and continued employment after the Term of this Agreement. Unless the Employee has advised the Board in writing of her wish not to be considered for renewal, at a regular meeting of the Board occurring at least one hundred fifty (150) days prior to the end of the term of this Agreement, the agenda shall include an item requiring affirmative action of five (5) or more members of the Board to notify the Employee that the Board intends to renew the contract for a further term of from three (3) to five (5) years or, conversely, that the Agreement will terminate and other candidates will be considered as Superintendent.

ARTICLE V – PERFORMANCE EVALUATION

5.01    The Board shall evaluate the performance of the Superintendent ("Performance Assessment") at least once per year during the Term of this Agreement.

5.02    The Performance Assessment shall be based on objective criteria, which may include the following:  (i) district-established annual measurable objectives, including the extent to which the Superintendent has successfully met her professional goals as established by the Board and Superintendent; (ii) achievement on PSSA and Keystone exams; (iii) student growth as measured by the Pennsylvania Value-Added Assessment System; (iv) financial management of the District; (v) standards of operational excellence; (vi) attrition and graduation rates; (vii) overall job performance; and (viii) any other criteria deemed relevant and agreed to by the Board and Superintendent.  The Board in its sole discretion shall decide the weight to be attributed to each of these criteria.

5.03    In the event that the Board determines that the performance of the Superintendent is unsatisfactory in any respect, it shall describe same in writing in reasonable detail.  A copy of the written evaluation shall be delivered to the Superintendent.  The Superintendent shall have the right to make a written response to the evaluation.  The Board's evaluation and the Superintendent's response shall be confidential and shall not be made a matter of public knowledge or conversation, unless disclosure of same is required by law or legal process, including but not limited to the provisions of Section 10-1073.1 of the School Code relating to information that must be disclosed on the District's publicly accessible Internet website.

5.04    The parties shall make their best efforts to follow the performance assessment procedure set forth in this paragraph 5.  However, in the event that the parties fail to meet or to perform the other activities for the Employee's performance assessment set forth in this

8

paragraph 5, such failure shall have no effect upon the other terms and conditions of this Agreement.

## ARTICLE VI – GENERAL PROVISIONS

6.01    The Employer agrees that it shall, to the extent covered by its insurance policies, defend, hold harmless and indemnify the Employee from any and all demands, claims, suits, actions and legal proceedings brought against the Employee in her individual capacity, or in her official capacity as agent and employee of the District, provided that the incident underlying any such demand, claim, suit, action or legal proceeding arose while the Employee was acting within the course and scope of her employment and excluding criminal activity and as such liability coverage is within the authority of the Board to provide under applicable law. However, in no case shall individual Board members be considered personally liable for indemnifying the Employee against any demands, claims, suits, actions and/or legal proceedings.

6.02    This Agreement sets forth the entire, exclusive agreement between the parties and supersedes any and all prior and contemporaneous negotiations, understandings, inducements, representations, conditions and agreements of whatever nature or kind, either oral or in writing, with respect to the employment of the Employee by the Employer.

6.03    Notwithstanding any term or provision herein or elsewhere, this Agreement shall not be modified except in writing signed by the Superintendent, approved by the Board and executed by an authorized officer of the Board.

6.04    If during the Term of this Agreement it is found that a specific clause of the Agreement is illegal under federal, state or other applicable law, the remainder of the Agreement not affected by such ruling shall remain in force.

9

6.05    This Agreement shall be binding upon and shall inure to the benefit of the parties, their successors or assigns, except that the Superintendent may not assign any of her rights or delegate any of her duties under this Agreement.

6.06    All references to the School Code contained herein shall also refer to and incorporate any amendment or recodification of such Code.

6.07    All written notices permitted or required under this Agreement shall be sent by certified mail, return receipt requested, as follows:

NOTICES TO THE BOARD SHALL BE DIRECTED TO:

Marple Newtown Board of School Directors
Attn: Board President
40 Media Line Road
Newtown Square, PA  19073

NOTICES TO THE SUPERINTENDENT SHALL BE DIRECTED TO:

Dr. Carol Cary
371 Dowlin Forge Road
Exton PA  19341

6.08    This Agreement shall be construed in accordance with the laws of the Commonwealth of Pennsylvania.

Intending to be legally bound hereby, the parties have signed this Agreement in Newtown Square, Delaware County, Pennsylvania, on the day and year first above written.

ATTEST:

_____
BOARD SECRETARY

WITNESS:

_____

MARPLE NEWTOWN SCHOOL DISTRICT

BY: _____
            **BOARD PRESIDENT**

BY: _____
            **EMPLOYEE**

10